IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION


JOHN KEITH AARON                                                                    PLAINTIFF


v.                                     NO. 3:14-cv-00220 PSH


CAROLYN W. COLVIN, Acting Commissioner                                    DEFENDANT
of the Social Security Administration


MEMORANDUM OPINION AND ORDER

Plaintiff John Keith Aaron ("Aaron") began the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Aaron maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole and offers three reasons why.[1] Aaron first maintains that his impairments meet or equal Listing 12.04, and the ALJ erred at step three of the sequential evaluation process when he failed to so find.[2]

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

[2] Aaron maintains that his impairments also meet or equal Listing 1.00. There is not, though, a Listing 1.00. In any event, the Court finds that there is no medical evidence Aaron's impairments meet or equal any of the category of musculoskeletal system impairments identified in Listings 1.01 through 1.08.

At step three, the ALJ must determine whether a claimant's impairments, when considered individually and in combination, meet or equal a listed impairment. See Raney v. Barnhart, 396 F.3d 1007 (8th Cir. 2005). The determination is a medical one, see Cockerham v. Sullivan, 895 F.2d 492 (8th Cir. 1990), and the claimant bears the burden of proof, see Pyland v. Apfel, 149 F.3d 873 (8th Cir. 1998).

Listing 12.04 encompasses affective disorders. The required level of severity for Listing 12.04 is met when the requirements of paragraphs A and B of the listing are shown or the requirements of paragraph C of the listing are shown. Paragraph A requires proof of a depressive, manic, or bipolar syndrome. Paragraph B requires that the syndrome result in at least two of the following:

> (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.

Paragraph C of Listing 12.04 requires a showing of a syndrome of at least two years' duration that has caused more than a minimal limitation of the ability to do basic work activities and one of the following:

> (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

The medical evidence relevant to Listing 12.04 is minimal. It reflects that Aaron has a history of depression, see Transcript at 310, 569, an affective disorder undoubtedly caused, in part, by an incident involving his mother in November of 2010, see Transcript at 39. In July of 2012, Dr. Kenneth Jones, Ph.D., ("Jones") performed a mental evaluation of Aaron. See Transcript at 578-582. Jones recorded Aaron's "mental allegations" and noted, inter alia, that he reported having made multiple applications for disability benefits and reported that he was unable to work because he had a stroke in February of 2012. See Transcript at 578. Aaron denied "any mental diagnoses or impairments," "any past or current psychiatric treatment," and "any past or current experiences with counseling or therapy." See Transcript at 578. Jones diagnosed alcohol dependence reportedly in remission and cannabis abuse reportedly in remission. See Transcript at 581. With respect to the effects of Aaron's mental impairments on his adaptive functioning, Jones found the following:

> A. How do mental impairments interfere with this person's day to day adaptive functioning? [Aaron] experiences no limitations in adaptive functioning, stating he can perform all daily individual and physical tasks. He show[s] appropriate insight and no impairment in cognitive functioning.
>
> B. Capacity to communicate and interact in a socially adequate manner? [Aaron] has appropriate expressive and receptive language abilities. He presents as calm and at ease today.
>
> C. Capacity to cope with the typical mental/cognitive demands of basic work-like tasks? [Aaron] appears to function in the low average range and appears able to comprehend and function in a basic work environment. He has no history of learning disabilities and has worked successfully in the past.

  D. Ability to attend and sustain concentration on basic tasks? [Aaron] shows no fluctuation in attention and concentration.

  E. Capacity to sustain persistence in completing tasks? [Aaron] has cognitive capacity to persist in completing tasks.

  F. Capacity to complete work-like tasks within an acceptable time frame? As mentioned, [Aaron's] mental and cognitive abilities are appropriate to work in a timely manner.

See Transcript at 581.

At step three, the ALJ considered whether Aaron has a mental impairment, or combination of impairments, meeting or equaling Listing 12.04. The ALJ found that Aaron does not have such an impairment. Specifically, the ALJ found that Aaron's "history of alcohol abuse, alcohol dependence in remission, cannabis abuse in remission, depression, history of chronic pancreatitis and pseudocyst, and residuals post stroke do not rise to the level of severity required by Listing 12.04 …" See Transcript at 15.

Substantial evidence on the record as a whole supports the ALJ's finding. The Court so finds because Aaron has failed to produce medical evidence that his impairments meet or equal Listing 12.04. The medical evidence reflects that although Aaron has a history of depression, his symptoms do not satisfy the requirements of paragraph B of Listing 12.04. There is no medical evidence his depression adversely impacts his activities of daily living. See Transcript at 164-169, 200-205, 581. He testified during the administrative hearing that a typical day consists of resting and watching television, see Transcript at 45, but there is no medical evidence that such an extreme limitation of his

activities of daily living is caused by his depression. The limitation is likely caused by other factors. There is no medical evidence Aaron's depression adversely impacts his social functioning. See Transcript at 168-169, 204-205, 581. For instance, although he reported that he does not socialize, he testified that he resides with a friend. See Transcript at 36. There is also little medical evidence his depression causes difficulties in maintaining concentration, persistence, or pace, see Transcript at 169-170, 205-206, 581, and there is no medical evidence his depression has caused him to experience repeated episodes of decompensation.

There is also no medical evidence that Aaron's symptoms satisfy the requirements of paragraph C of Listing 12.04. Specifically, there is no medical evidence his depression causes more than a minimal limitation of his ability to do basic work activities. Any limitation of his ability to do such activities is likely caused by other factors.

Aaron offers a second reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. Aaron maintains that his impairments additionally meet or equal Listing 12.09, and the ALJ erred at step three when he failed to so find.

Listing 12.09 encompasses substance addiction disorders. The listing is different than the other listed impairments because it is a "reference listing," that is, it only indicates "which of the other listed mental or physical impairments must be used to evaluate the behavioral or physical changes resulting from regular use of addictive substances." See Trice v. Astrue, 2009 WL 1357450 at 3 (C.D.Cal. 2009) [citing 20 C.F.R.

Pt. 404, Subpt. P, App. 1]. In order for a claimant to meet or equal Listing 12.09, he must show that his substance addiction results in at least one of nine other specified listings. See Pettit v. Apfel, 218 F.3d 901 (8th Cir. 2000). Two of the "other specified listings" are pancreatitis, which is evaluated pursuant to Listing 5.08, and a depression syndrome, which is evaluated pursuant to Listing 12.04.

The medical evidence relevant to Listing 12.09 reflects that Aaron has a history of alcohol and drug abuse reportedly in remission. See Transcript at 532-534, 581, 651-653. The fact that he has such a history does not, though, satisfy the requirements of Listing 12.09; he must also show behavioral or physical changes associated with the regular use of substances that affect the central nervous system.

The ALJ found at step three that Aaron does not have an impairment, or combination of impairments, meeting or equaling a listed impairment. Specifically, the ALJ found that Aaron's history of, inter alia, alcohol abuse, alcohol dependence in remission, and cannabis abuse in remission do not meet or equal Listing 12.09.

Substantial evidence on the record as a whole supports the ALJ's finding. Listing 12.09 identifies two changes found in the record, i.e., Aaron's history of pancreatitis, see Transcript at 377-381, 450-458, 497-502, and his depressive syndrome, see Transcript at 569. The impairments do not meet or equal the cross-referenced listings. Aaron's history of pancreatitis does not meet or equal Listing 5.08 because there is no medical evidence the impairment has caused the requisite weight loss. See Transcript at 17, 532. His depression does not meet or equal Listing 12.04 for the reasons outlined above.

It is true that Dr. Raymond Valdes, M.D., ("Valdes") noted that Aaron has a history of strokes. See Transcript at 632-633. Although Valdes' progress notes are not a model of clarity, his notes do not appear to reflect that the strokes are attributable to Aaron's alcohol or drug abuse.

In April of 2012, Dr. Akhigbe Churchill, M.D., ("Churchill") saw Aaron for his complaints of slurring speech and difficulty walking. See Transcript at 532-534. Churchill diagnosed Aaron with, inter alia, alcohol-related brain damage. Churchill's progress notes, though, give no indication of the extent of the damage, and Aaron has offered no medical evidence on that question. He has also not offered any other findings to support Churchill's one-time diagnosis.

Aaron offers a third reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. Aaron maintains that the ALJ erred when he failed to call a vocational expert at step four.

The ALJ is required to determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past work. The determination is made by ascertaining the demands of the claimant's past relevant work, see Social Security Ruling 82-62, and then comparing it with what the claimant is capable of performing, see Sells v. Shalala, 48 F.3d 1044 (8th Cir. 1995). Although the ALJ may solicit vocational expert testimony in making that determination, the ALJ is not required to do so because the claimant has the burden of proving he cannot perform his past work. See Lewis v. Barnhart, 353 F.3d 642 (8th Cir. 2003).

The ALJ found that Aaron has past work as an automotive painter, "a job most consistent with collision repairer ..." See Transcript at 21. The ALJ found that the job is within Aaron's residual functional capacity, and he is capable of performing the job. The ALJ made the foregoing findings without the benefit of vocational expert testimony.

Although the ALJ's findings at step four are a bit confusing, he did not commit reversible error by failing to obtain vocational expert testimony.[3] The ALJ stopped at step four, and substantial evidence on the record as a whole supports his decision to do so. The ALJ ascertained the demands of Aaron's past work, then compared those demands with what he is capable of performing. Aaron has not shown that the ALJ incorrectly ascertained the demands of Aaron's past work nor has Aaron shown that his residual functional capacity was improperly assessed. The ALJ was therefore not required to obtain vocational expert testimony.[4]

In conclusion, there is substantial evidence on the record as a whole to support the ALJ's findings. Accordingly, Aaron's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

---

[3] At step four, the ALJ found, in part, that given the demands of Aaron's past work, a hypothetical individual of the same age, education, work experience, and residual functional capacity as that of Aaron would be able to perform his past work. The question at step four is not whether a hypothetical individual of the same age, education, work experience, and residual functional capacity of the claimant could perform his past work, the question is "whether the claimant has the residual functional capacity to perform the requirements of his past relevant work." See Transcript at 13.

[4] Aaron also maintains that his "lack of funds to obtain medical treatment and/or take prescribed medications" were not considered." See Pleading 10 at 13. To the extent the ALJ failed to consider those matters, it does not warrant a remand. There is ample evidence in the record to decide this case. The outcome does not hinge upon his lack of medical treatment or failure to take prescription medication.

IT IS SO ORDERED this 15th day of September, 2015.

_____
UNITED STATES MAGISTRATE JUDGE